UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


United States of America

    v.                                Criminal No. 17-cr-163-JD
                                          Opinion No. 2021 DNH 014

Louis Gardner


O R D E R

Louis Gardner moves for a reduction in his sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A), based on the combined effect of his health conditions and the risk of contracting COVID-19.  The government objects to the motion on the grounds that Gardner remains a danger to the community and release would not be consistent with the factors in 18 U.S.C. § 3553(a).  An officer in the United States Probation and Pretrial Services in this district has filed a report and recommendation on Gardner's request.


Standard of Review

A court may reduce an inmate's sentence if the inmate has exhausted administrative remedies, establishes an extraordinary and compelling reason for the reduction, and if the reduction is consistent with the sentencing factors in 18 U.S.C. § 3553(a) and applicable policy statements issued by the Sentencing

Commission.  § 3582(c)(1)(A).  Because the Sentencing Commission has not released an updated policy statement since enactment of the First Step Act, courts continue to use its most recent statement from November of 2018, U.S.S.G. § 1B1.13.  See, e.g., United States v. Gonzalez, 2021 WL 135772, at *1 (D. Mass. Jan. 14, 2021).  The policy statement is clarified in the commentary, which states that an extraordinary and compelling reason may exist based on a serious physical or medical condition as long as the inmate is not a danger to the safety of any other person or to the community.  United States v. Manning, 2021 DNH 006, 2021 WL 77149, at *1 (D.N.H. Jan. 8, 2021).

## Background

Gardner pleaded guilty to drug and firearms offenses, including conspiracy to distribute and to possess with intent to distribute forty grams or more of fentanyl.  He was sentenced to 160 months of incarceration to be followed by four years of supervised release.  Gardner's projected release date is March 14, 2029.  He has served 23.8% of his sentence.

The probation officer reports that Gardner is forty-three years old.  He has had significant medical issues, including ongoing Hepatitis C, arthritis due to a 2013 back injury, a heart valve replacement in 2014, and hypertension.  Gardner is

2

also morbidly obese.  He is receiving care for his medical conditions while incarcerated.

The government consulted with Dr. Gavin Muir, Chief Medical Officer of Amoskeag Health in Manchester, New Hampshire, about Gardner's medical conditions for purposes of evaluating his motion.  After a review of Gardner's records, Dr. Muir reported that Gardner is morbidly obese and has hypertension.  The government acknowledges that those conditions put Gardner at higher risk for developing severe illness if he were to contract COVID-19.

Gardner has a significant adult criminal history, beginning in 2000.  Gardner's prior offenses include driving after suspension of his license and after being deemed to be a habitual offender, assault, criminal threatening, possession and sale of drugs, and multiple parole violations.  The crime of conviction involved three co-defendants, including Gardner's long-time girlfriend, and distribution of both methamphetamine and fentanyl.  When he was arrested, Gardner had in his possession more than 100 grams of fentanyl and a loaded gun.

While he was being detained prior to sentencing, Gardner assaulted one of his co-defendants, who was in a wheelchair, accusing him of being a "rat".  The government moved to withdraw Gardner's plea agreement on the ground that his assault on

Marando was criminal activity that breached the agreement.  The court held a hearing and found, based on the evidence presented, that on January 29, 2019, Gardner had repeatedly punched Marando, eventually knocking him out of the wheelchair.  The court granted the government's motion to withdraw the plea agreement based on Gardner's assault on Marando.  Doc. no. 108.

Gardner also has a long history of substance abuse, beginning when he was thirteen.  He progressed to abuse of opiates in his mid-twenties.  When he was arrested, he tested positive for cocaine, Methamphetamine, fentanyl, Buprenorphine, and amphetamine.  During his presentence interview by the probation officer, Gardner denied that he had positive test results for opiates when he was arrested.

Currently, Gardner is incarcerated at the Federal Correctional Institute in Gilmer, West Virginia ("FCI Gilmer").  He has received two disciplinary reports while in custody and has not participated in the drug education program.  He is deemed by the Bureau of Prisons to be a high risk for recidivism and his security classification is medium.

He filed a request for release with the warden, and his request was denied.  The probation officer called Gardner's case manager but was unable to obtain information about active cases of COVID-19 at the prison.  The probation officer reports, based

4

on the Bureau of Prisons' website, that as of January 12, 2021, there were eighty-nine inmates and thirty staff members infected with COVID-19 at FCI Gilmer.

Gardner states that he would live with his mother in Belmont, New Hampshire, if he were released. The probation officer reports that she does not have an updated plan and that any plan would have to be investigated before Gardner could be released. The probation officer also reports that Gardner has an outstanding warrant that could affect his release.

## Discussion

Gardner contends that he has shown an extraordinary and compelling reason for reduction of his sentence based on his risk of serious illness due to the combined effect of a potential infection with COVID-19 and his medical conditions. The government does not dispute that Gardner has met that requirement but argues that he remains a danger to the community and that the sentencing factors do not support a reduction in his sentence. For those reasons, the government contends that his motion should be denied.

A.  Extraordinary and Compelling Reason

There is no dispute that Gardner's obesity and hypertension in combination with the potential for contracting COVID-19 in prison provide an extraordinary and compelling reason in support of his motion.  The court need not address that requirement further.

There is also no dispute that Gardner has exhausted administrative remedies, as required.


B.  Sentencing Factors

Section 3553(a) states that the "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" provided in § 3553(a)(2), and lists factors for determining an appropriate sentence.  The first two factors are particularly pertinent for purposes of this motion.[1]  The first factor directs the sentencing court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant."  § 3553(a)(1).

---

[1] The third factor directs consideration of "the kinds of sentences available;" the fourth and fifth factors focus on the Sentencing Guidelines; the sixth factor addresses "the need to avoid unwarranted sentence disparities;" and the seventh factor directs courts to consider the defendant's restitution obligations.

The second factor focuses on the purposes of sentencing, including:

> the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

§ 3553(a)(2).

The court considered the § 3553(a) factors when Gardner was sentenced to 160 months in prison, which was an appropriate sentence for his serious crimes and in light of his extensive criminal history. While Gardner has shown that he may have additional risks associated with the COVID-19 pandemic, which is an intervening change in the circumstances related to sentencing, he has not shown that the sentencing factors support a reduction in his sentence.

As Gardner acknowledges, his crimes of conviction were serious drug and firearms offenses. He had more than 100 grams of fentanyl, an extremely dangerous drug, and a loaded gun in his possession when he was arrested.

Gardner characterizes his criminal history as a pattern of driving offenses, but his prior offenses are considerably more

serious than he describes. His history includes drug crimes, assaults, and probation violations, along with arrests for driving after his license was suspended or revoked and after being found to be a habitual offender. Significantly, while he was detained before sentencing Gardner attacked his co-defendant, Marando, who was in a wheelchair. That assault resulted in the withdrawal of Gardner's plea agreement.

Gardner also argues that his offenses do not show dangerousness because they were the result of his drug addiction. That explanation does not apply to his assault on Marando, which occurred while they were both in jail. Given Gardner's long history of drug abuse and apparent failure to participate in drug education programs while incarcerated, he has provided no basis to conclude that the pattern of substance abuse and violence would not resume if he were released. Gardner's high risk of recidivism is considered by the court to be a significant aggravating factor.

The sentencing factors under § 3553(a) support the sentence imposed and weigh heavily against granting the motion for a reduction in sentence.

## Conclusion

For the foregoing reasons, Gardner's motion for a reduction of his sentence (document no. 168) is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

January 21, 2021

Cc: Counsel of record.